is United States v. Pierce. Good morning. May it please the court, Gene Vorobiev on behalf of Mr. Pierce. Good morning, counsel. Please proceed. Okay. There are two issues in this case. One is the sufficiency of the evidence to support the armed, the conspiracy to commit armed robbery or to brandish a firearm in the course of that robbery. And also was there armed robbery is categorically a crime of violence under 924C. I wanted to focus on the first issue and then if I have a little bit of time to add maybe a sentence on the last issue. On the sufficiency of the evidence, I had three points to make. One is that the major argument in this case by the government has been that the security video right before the robbery took place is evident that this was in fact a conspiracy to commit armed robbery as opposed to a robbery of the credit union. And we have transmitted the video to the court for review. And frankly, if the court can see a gun in that video, you know, the court has better eyes than me. I have a question about the video. I've watched the video closely. I would wager that we probably all three watched the video very closely, several times. So I appreciate that. There is also, was also testimony from a police officer in the bank, as I recall, looking at it, not in the bank at the time, but forgive me, but who responded and viewed a video of it from a different image. And the testimony is that that officer observed the defendant walking in brandishing the gun. So what I can't tell from the record is how far away the car was where we're looking at that video of the trunk from the front door of the bank. I can't find that on the record. And then I, and I can't, I can't imagine that even if the gun was in the duffel bag, right? It's hard to imagine that the defendant took the gun out before he entered the bank. If that's where it was, it just doesn't seem very plausible. If the, if the alternative explanation is maybe it was in a pocket or in a holster or something and was, you know, withdrawn very, very imminently just before stepping inside the bank. But I cannot find any evidence that goes to that point. Am I missing anything in the record? Yeah, you are. Unfortunately, off the top of my head, I don't know the answer to that. Whether there is a different camera angle that would show my client taking the gun out. And more importantly, how far from the car was he to, you know, to make a reasonable inference that the co-defendant would be able to see it. So unfortunately, I can't, I'd be happy to research the 28-J letter if that would be helpful to the court, but I don't know. If I, if I, if I missed it, I wanted to know that. I take it. I can't find anything that would tell me one way or another, whether the defendant had a pocket and a jacket or a holster or any other place to put the gun either. Is that fair? I know that he wore a jacket based on the video. And I also know that the witnesses described the gun as a small gun. So I think there are a number of places where it could have been other than the duffel bag. You know, it's not a shotgun. So I can't see. Let me just because I don't want to use up all your time. I can't see a gun anywhere in that video, right? But that's not all the government has. There's also, I think, evidence that I would, they, they rely on three pieces of evidence, but it seems to me the more problematic for you is the testimony of the confidential informant about loaning the gun. Do you want to go to that? Because the testimony is that your car, your client was driven there by the co-defendant. Right. Correct. And my response to that would be the co-defendant has always remained outside. There is no evidence that would suggest that he was ever inside or ever knew that my client was going there to borrow a gun. So that, that, that's my response. I know that he has accompanied my client to the informant, but that's all, I mean, all that is, is associations. There's no evidence. We were circumstantial that Moore knows that he's borrowing the gun. Well, I think the government would say, and we're going to hear about it in a minute, but that is their circumstantial evidence, isn't it? Their, their argument is that that's a fair inference that the driver would know why they're going over to the confidential informant's house to borrow the gun. I think that must be what they're relying on. Well, I, I would, I see, I think that that, that would be my impression of what the governor is relying on. And I hate to answer that was a question of my own, but I would say why, uh, I mean, all we know is that two guys are going to a place, you know, there has to be circumstantial evidence suggesting that they have discussed this beforehand, because for example, when they go back towards the bank, and this is essential as a government's case on conspiracy, there are text messages exchanging what they're going to do. So that's, they're basically, the prosecutor described it as a conspiracy hatched over text messages, no mention of the gun there. So if, if they were going to discuss, uh, using the gun there, you would think that they would discuss it there. So given that specific conversation right before the robbery, where the gun is not mentioned, I think on this record, speculation to just take the fact that they went together to point A where my client picked up a gun, no evidence that he ever discussed it was more from that point forward and say, well, if they went there together, they must have discussed it. I mean, maybe that argument would have more weight if this was a shotgun, because it's kind of hard to hide that, uh, from plain view, you know, if it's big, he's presumably carrying that out of the house. So then you can say, well, circumstantially must've seen it in his hands. That's a small gun. He could have put it in his pocket and you know, you, you don't see it. And they certainly don't discuss it on the way to the bank and it's not on the video. So, um, that would be my response. I don't know if it's satisfactory to the court, but. Well, counsel, let me, let me ask a question because the jury was, as I understand it was expressly, uh, uh, given instructions on either convicting on conspiracy to commit armed robbery or conspiracy to commit robbery. Correct. So they had this issue squarely before them. They could have done either one and they chose to convict on armed robbery. Doesn't that, um, do we have to give that some deference in determining what the proper inference is from the facts that were presented? Um, yes, we have to give it under a standard review. We have to presume all, uh, you have to make all inferences in favor of the judgment of conviction, but the inference still has to be based on evidence. You know, at some point an inference becomes speculation if it's not based on a fact. I mean, yeah, I know that's kind of that, that line may be in the eye of the beholder ultimately, but in part of the problem that I'm having with that is there's so many cases where it's circumstantial evidence. I mean, it's pretty rare to say, you know, we got the guy red handed and yeah, I mean, a lot of times there's circumstantial evidence brought in and that's seems to be what the jury is supposed to do is determine, you know, how far these facts can go. And in this case, the jury said, well, it's, it's armed robbery. If we were to accept your argument, I guess that would vacate that conviction, but then he wouldn't even be convicted of conspiracy for robbery either. Um, and so I'm just wondering why we don't defer to the jury for the inferences made here. I mean, it's one thing if it couldn't have happened that there was absolutely no evidence, I give you that, but here there does seem to be some evidence, uh, of what, uh, what more would have known. Well, you know, your, uh, my response would be that in any sufficiency of the evidence case, when the court reverses, that's a, that's a situation, unless it was a purely legal issue. In other cases, that means that the jury had made an inference that the court of appeal ultimately said that there is no evidence basis for. Now, those are very rare, especially on the factual issue like this one. And we acknowledge the breadth of the standard to review, but there has to be some rational outside limit to whether, you know, to where we stop inferring from facts and start speculating because otherwise, if this is taken to its logical conclusion, we can say, two guys went to commit a robbery and ended up being an armed one. Why can't we just infer that, you know, the fact that they've agreed to commit the robberies that was ultimately committed. And my understanding of the ninth circuit law that that kind of inference goes too far, that mere association, mere knowledge isn't enough. We require at least some circumstantial evidence of an agreement. It doesn't have to be formal. They don't have to sign or shake hands on but we have to have some facts to support the inference. And again, the example I gave to judge Crystal's question, if he carries out a shotgun and it's visible, there is some suggestion they could be visible. I could, you know, I could understand your honor's question, but I don't think we have that here. I think just inferring this fact from the fact that two guys took a trip to the same place, another guy never goes inside. If you just take that fact alone, to me, that is taking the substantial of a standard too far. And I see that I've exceeded my, a lot of time. Yes, counsel, we'll give you one minute for rebuttal. Let's hear from the government. Thank you, your honors. May I please the court. My name is Yuna Chung and I'm an Assistant U.S. Attorney for the District of Alaska. And I ask that this court affirm Mr. Pierce's convictions for conspiring to commit armed bank, armed credit union robbery and for brandishing a firearm to further the crime of violence. As for the conspiracy count, there is ample evidence that Mr. Pierce and his co-defendant, Mr. Moore conspired to use a gun in the robbery. As it was discussed earlier. What's your strongest evidence? Counsel, what's your strongest evidence of conspiracy? The government's strongest evidence would be that the two of them, Mr. Pierce and Mr. Moore, drove together to the home of the person that lent them the gun that they used in the robbery. They drove there together before going to the credit union. The government doesn't need to prove some kind of express or formal agreement in a text message. Is there any evidence other than the, excuse me, is there any evidence other than the fact that that Moore drove him there that he would have known? I mean, I tend to agree with you that the inference is he would have known why he drove there. But was there any evidence that that he knew that Moore knew why he was driving Pierce to that house? I mean, something had to be there. They drove there before they did the murder. The presumption seems to be that they were going to get something. But is there evidence that it might have been something other than getting a gun? Was there any explanation given? So there was no formal agreement and there was no text message saying, by the way, let's go to this guy's house. No, that's not my question. That's a different. You're not answering Judge Nelson's question. It's an important question. Could you focus on it, please? It would really help me. The other evidence, in addition to the two of them driving together, I just want to know about when they were driving there, was there other evidence other than just the general inference that, you know, you were stopping there before you went to the robbery? Was there some it was there some indication that he would have seen the gun? Was there some indication that they discussed it? Or are we just are we just left with an inference at that point? We are, Your Honor, left with a very reasonable inference. If you drive there together, the jury made a reasonable inference that right before they go to rob the credit union, they drop by somebody's house. Excuse me. Excuse me. Right there. Your brief says that two moments before the robbery. That's not what the testimony was at trial. The testimony was that it was on the morning of the cross examination. The defendant said he couldn't be sure he didn't know. Even if it was a day, even if it was a day before, wherever, whatever time period it was, they drove there together. They don't, you know, drive around town together, you know, on any other instances that's on the record, specifically very close to the date of the robbery. So to get back to Judge Nelson's question, because this is an important point. The question was, was there any other reason to go there? Right. The confidential informant was a drug dealer, I think, who was the defendant's source for drugs. That's where he went after the bank robbery to buy drugs, right? Right. That's correct. So do we have anything there? I'm just trying to explore the answer to Judge Nelson's question. No, but the fact that they drove there together is a reasonable and getting there's a reasonable inference from the fact that they drove there together, that Mr. Moore knew the purpose of that trip. Is there any evidence that they got, that he came out of the apartment with, I think it was an apartment, with drugs and the gun or just the gun? Just the gun, your honor. Okay. Did they go there any other time together? I think after the bank robbery, I know the defendant went back there, but were they both together after the bank robbery to buy the drug? No, they were not there together. Only Mr. Pierce went back to return the gun and purchase some drugs. Thank you. Thank you, Judge Nelson. Need to hijack your question. So in addition to that evidence, the fact that they drove together, there is more, you know, there's surveillance footage that the government presented where Mr. Pierce is endlessly packing this duffel bag. And it is true, your honor, that the gun, you cannot see it on the video. I don't see it in the video either, but again, it's reasonable for the jury to infer that, you know, something was going on in that trunk where they were packing the duffel bag and the gun may have been somewhere else, but the government is not, it's not the government's burden to prove that the gun was in the duffel bag, but it is a reasonable- Wait a minute, excuse me. That's important. I'm trying to figure out why it matters that the defendant was shuffling stuff around in the duffel bag. If there's no evidence ever putting it in the duffel bag, I was trying to figure out if there's evidence that he was seen taking it out of the duffel bag. I can't find either one. So can you back up and just explain to me the significance of the duffel bag, please? Your honor, you're correct. On the record, there's no evidence that the gun was placed in the duffel bag. There was no testimony to that effect. It would be in conjunction with all the other evidence, them driving together and the jail calls that together. Again, there's surveillance footage of the two of them outside of the credit union, right before the robbery with a bag that the co-defendant looks at, if you look at the video, pretty intently, and it goes on for a pretty long time. So your honors are correct that there's no evidence on the record that the gun was in the duffel bag. But again, the jury, it would have been reasonable for the jury to infer that perhaps it was in there and they were talking about where they put the gun or where it would be easier for peers to pull the gun out once they were in the credit union. These are not speculations. Maybe, but opposing counsel's argument is that that goes just one step too far into speculation. What he's really arguing is that no reasonable juror from this evidence, right, could find a conspiracy, an agreement. I grant you're absolutely right that it doesn't have to be expressed, but this is the nub of it. So you think your strongest evidence that there was at least tacit acknowledgement that a gun was going to be used comes from the driver taking the defendant to the confidential informant's house. Is that right? I cannot see a gun anywhere in that video and I can't see anything that says the gun was ever in the duffel bag. So that doesn't help me. Right. That might not be the strongest evidence that the government has, but the fact that they drove there together and then three days later, Mr. Moore, during a jail call, you know, affirms that it was a robbery at gunpoint. Also, he says at gunpoint, he says at gunpoint. So the caller says, I hear that you robbed a bank at gunpoint. And then Mr. Moore in his jail call says, no, I was just a getaway driver. So he didn't say what you seem to be. I want to make sure I understand that argument. You seem to be inferring that because he denied that he robbed and he was just the driver, that the inference there is he wasn't contesting the armed portion of that. You're absolutely correct. Yes, Your Honor, you're absolutely correct. If I hadn't used a gun in the robbery and my friend or acquaintance tells me you robbed a bank at gunpoint, you know, I would just say, no, no, the irony is that Moore never there's no allegation that Moore used the gun. So in not denying it, he's not agreeing. He's clearly not agreeing that he carried a gun with him. So I guess the question is, is it you know, and this is where we're struggling, I guess, is the inference versus speculation that and not pushing back on the armed portion of that statement, that that's a reasonable enough inference for the jury to to find that he knew that there was a gun. Your Honor, it's undisputed that Moore did not go into the credit union, but he he agreed, explicitly agreed that he was the getaway driver for a robbery at gunpoint. So can I I was trying to I responded visibly, I think, probably to your statement, but I think I misunderstood your statement because I've read, of course, we all have this transcript and and Moore didn't say anything about the gun. It's the questioner. The caller says, hey, the paper said you there was a you robbed the bank at gunpoint. And I think your argument is he he would have reasonably expected to object to that. I guess what he says is just a driver. But yeah, it's still considered armed bank robbery. That's what Judge Nelson's pointing out, right? Yeah. Is your argument that if he hadn't agreed, he would have objected to that affirmatively? I that is that is our argument, Your Honor. He would have objected to that characterization that it was a robbery at gunpoint. If Mr. Pierce had gone rogue and, you know, carried the gun inside a gunpoint, it was a robbery at gunpoint. The question is, Moore knew about it in advance, right? He knew about it in advance. There's a reasonable inference to make here that he knew about it in advance because if he hadn't had any idea that Pierce would go into that credit union with a gun and his acquaintance says it was a robbery at gunpoint, there's no way he would let that lie. He would say, what gun? I have no idea about this gun. You know, I am a getaway driver for a robbery at gunpoint. He is admitting to that fact, Your Honor. You're sort of putting words into it. I get your argument and I'm actually inclined to agree, but I just want to be clear. He didn't say I was the driver for a robbery at gunpoint. He just said I was a driver. That's correct, Your Honor. He knew the gun was going to be used in advance. I mean, that's the key. After the fact, and this conversation is happening after the fact, three days, you know, he's in jail. It was a robbery at gunpoint, right? That had happened. The question we need to know is whether or not there's a reasonable inference that the defendants knew that, the co-defendants knew that and agreed that was going to happen ahead of time, right? Yes, Your Honor. There is a reasonable inference that we can make that Mr. Moore knew ahead of time, given that he did not disavow the existence of a gun in that robbery during that call. In addition to all the other evidence that supports the fact that he knew about the gun, like driving there together. In the call, you know, the jury is supposed to make a decision based on, you know, we have a jury for a reason. They think about what's a likely thing a person would do. And if you're in jail sitting there, not knowing anything about a gun, and your friend mentions a gun, it is reasonable for anybody to say what gun. There's no, you know, you know, that's probably what the jury could infer from that. All right, counsel. Thank you. We've helped you exceed your time. Rebuttal. One minute. Yes, Your Honor. Thank you. On the phone call, I think what my colleague on the other side is missing is the context of the call. Because the way I read it is the caller basically said that the paper has written that, you know, you were the participant, you know, you robbed the bank at gunpoint. And he first said, no, no, no, no, no. And then he kind of evolves to, well, I was a getaway driver. And then at the end, he says, don't blame my girlfriend for it. You know, if I did it, I did. So in that context, he would have no reason at all to parse the accusation, say, you know, he freelanced and used a gun where we didn't agree to this. This is not the subject that was raised. But that would be my response. And unfortunately, I think counsel's argument does cross into what I think is speculation. And my last point on the second issue, we filed a 28-J letter. Depending on what the Supreme Court does with the issue, whether this is a valid 924-C predicate, there may need to be further briefing as to whether or not Watson is still good law in light of the recent Supreme Court decision on a similar issue under the armed criminal justice. But counsel, you conceded that under the present state of the law, your argument is foreclosed. Correct, correct. And as we stand today, Watson is the law of the circuit. And the question would be, for example, if the Supreme Court takes up the issue, which has several petitions on, and depending on how that comes out, there may be an argument that under Miller v. Gammy, it's been implicitly overruled. I don't have that yet. Right now, Watson is the law of the circuit. But I just wanted to alert the court to that fact. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: Rawlinson, Christen, R. Nelson